**Minda MADERAZO, Plaintiff,**

v.

**Raymond FARRELL, Commissioner of the Immigration and Naturalization Service, Defendant.**

**Civ. A. No. 1459–69.**

United States District Court
District of Columbia.

Jan. 7, 1970.

M. Ronald Gould, New York City, George H. Cohen, Bredhoff, Gottesman & Cohen, Washington, D. C., for plaintiff.

Will Wilson, Asst. Atty. Gen., John L. Murphy, Paul C. Summitt, Constance S. Rotan, Attys., Dept. of Justice, for defendant; Thomas A. Flannery, U. S. Atty., Gil Zimmerman, Asst. U. S. Atty., of counsel.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MATTHEWS, Senior District Judge.

The motion of the defendant to dismiss the complaint or, in the alternative,

for summary judgment is before the Court. In her papers opposing the defendant's motion for summary judgment, the plaintiff has requested summary judgment in her favor,[1] and this has been treated by the Court as a motion by plaintiff for summary judgment. The Court has considered the motions, the points and authorities in support of and in opposition to the motions, the record including the Immigration and Naturalization Service records and exhibits, the briefs of the parties and the argument of counsel in open court. The following facts appear therein without substantial controversy.

1. The instant action is one wherein plaintiff seeks a judgment declaring (1) that the denial by defendant of her petition for classification as a lawyer under section 203(a) (3) of the Immigration and Nationality Act, as amended,[2] was arbitrary, capricious and contrary to law, and (2) that she is entitled to a third preference visa classification.

2. The plaintiff, a 41-year old woman, is a native and citizen of the Philippines.

3. She was graduated from the University of the Philippines in April 1953 with the degree of Bachelor of Laws.

4. On January 27, 1954, plaintiff was admitted to the Philippine Bar.

5. Following her admission to the Bar, plaintiff was an associate in a law firm in Manila for several months. Because her compensation there was quite small, she accepted a position with a manufacturing company in its department of market research. She remained with this company until October 16, 1956 at which time she was admitted to the United States as a visitor.

6. On June 10, 1957 plaintiff was granted a change of nonimmigrant status to that of a student to study "commercial subjects" at an adult school and then transferred to the University of San Francisco to work toward a baccalaureate degree in Philosophy.

7. On April 29, 1959 she was granted a change of nonimmigrant status to that of a foreign government employee to work as "secretary in the office of the representative of the Commission of Tourism of the Philippines in San Francisco." In 1965 she became secretary to the Assistant Vice-President of the Philippine National Bank in San Francisco where she remained until February 1969. She was last admitted to the United States at San Francisco on October 30, 1968 for "duration of status" as a foreign government employee under section 101(a) (15) (A) (ii) of the Immigration and Nationality Act, as amended.

8. On February 26, 1969 plaintiff began employment in a law office in San Francisco as a "law and research clerk." On the same day she filed a petition for classification as a member of the professions [3] as a lawyer (a third preference classification) pursuant to Section 203 (a) (3) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1153(a) (3), this being at the San

1. Page 8 of paper filed by plaintiff herein on October 24, 1969.

2. 8 U.S.C. § 1153(a) (3), which provides:
(a) Aliens who are subject to the numerical limitations specified in section 1151(a) of this title shall be allotted visas or their conditional entry authorized, as the case may be, as follows:
* * * * *
(3) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a) (ii) of this title, to qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States.

3. Section 101(a) (32) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1101(a) (32), provides that the term "profession" shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies or seminaries.

Francisco office of the Immigration and Naturalization Service.

9. Due to an injury to her hand in an accident, plaintiff discontinued on March 28, 1969 the employment at the San Francisco law office which she had commenced on February 26, 1969.[4]

10. There is in the Immigration and Naturalization Service record herein a signed statement (purporting to be an affidavit) by plaintiff. In it she indicates that in the course of her work in this country she learned that an "especially large group making up California's foreign population are persons of Philippine origin", that she became acquainted with many lawyers who serve the large Filipino community in California, and that she formed the opinion "that in the United States there are great opportunities in the field of law, especially for one who is a member of a minority group," and that she "decided to clerk in law offices" where she "could earn a living, acquire knowledge of the substantive and procedural law and gain practical experience", and that she intends "to practice or engage" in her profession.[5] Moreover, in her statement she indicated an awareness that to be certified for admission and a license to practice law a person must be a citizen of the United States.[6]

11. On April 4, 1969 the District Director, Immigration and Naturalization Service, [San Francisco] denied plaintiff's visa petition for third preference immigrant classification on the ground that she had "failed to establish" that she is "a qualified member of the professions and will engage in a professional occupation in the United States." The District Director further gave plaintiff this ruling:

In view of your extensive and continuing employment in nonprofessional occupations, and your failure to submit evidence that you were admitted to practice before the courts in the country where you obtained your degree, it therefore cannot be found that you have established that you have the academic preparation or the employment background to enter into a professional occupation in the United States, and you are accordingly not eligible for classification under section 203(a) (3) of the Immigration and Nationality Act, as amended.

12. Thereafter, on May 20, 1969 the Acting Regional Commissioner, Immigration and Naturalization Service, dismissed plaintiff's appeal from the denial of her petition by the District Director on the ground that "petitioner has not satisfactorily established that she is a member of the professions." The paragraph which best illuminates the basis for the Acting Regional Commissioner's action reads as follows:

The petitioner was engaged as an associate in a law firm "for a few months" shortly after graduation 16 years ago but since that time her only employment has been in nonprofessional occupations and while so employed cannot be considered as a member of the professions. The fact that for one month, February 26 to March 28, 1969, she was employed as a "law

---

4. Currently she is employed by Graham & James of San Francisco as a law and research clerk according to plaintiff's statement of material facts, page 5, filed in this action October 24, 1969.

5. The Business and Professional Code of California, Section 6060(g) (3) (ii) provides that law office study may be substituted for college or University study for admission to the California Bar.

6. The Immigration and Nationality Act, as amended, does not specify that a member of the professions must be coming

to this country to engage immediately in the practice of his profession in order to qualify for third preference status. Matter of Stamatiades, 11 Interim Decisions 1594 (1966). An applicant for a visa under section 203(a) (3) may be a member of a profession for which a license, or even citizenship may be a prerequisite before he may engage in his professional endeavor. It is sufficient if he can show a bona fide purpose or intent to work in the United States in his qualifying endeavor. Matter of Naufahu, 11 Interim Decisions 904 (1966).

and research clerk", which is also non-professional employment, does not now make her a member of the professions as a lawyer. Her past history of a lengthy employment in secretarial and clerical nonprofessional occupations is not a persuasive indication that she will now engage in the profession of a lawyer in the United States in competition with law graduates of United States colleges and universities.[7]

Now, therefore, the Court concludes as a matter of law

1. That the actions of the District Director and Regional Commissioner are reviewable by this Court.

2. That the undisputed facts make out a prima facie case for the petitioner (plaintiff).

3. That the determination of the District Director and the Regional Commissioner that petitioner failed to sustain her burden of proof is not supported by substantial evidence.

4. That defendant abused his discretion in denying plaintiff's application for a visa petition pursuant to the provisions of Title 8 U.S.C., Section 1153(a) (3) on the basis of the certified administrative record filed with the court.

It is therefore by the Court this 7th day of January 1970:

Ordered:

1. That the motion of the defendant to dismiss or for summary judgment be and the same is hereby denied.

2. That the motion of plaintiff for summary judgment be and it is hereby granted, and that the matter is remanded to the defendant for action not inconsistent with this decision.

---

7. Pertinent here is a decision of the Supreme Court in United States v. Laws, 163 U.S. 258, 16 S.Ct. 998, 41 L.Ed. 151 (1896). There the Court held that a German chemist coming to the United States to work on a sugar plantation is a person belonging to a "recognized profession" within the meaning of the Act of March 3, 1891, excepting him from the contract labor prohibition of the Act of February 26, 1885, then in effect. The Court said in part (at page 268, 16 S.Ct. at page 1002):

"It is not necessary that he should offer his services to the public at large, nor that he should hold himself ready to apply his scientific knowledge and skill to the business of all persons who applied for them before he would be entitled to claim that he belonged to, and was actually practicing, a recognized profession. * * * So long as he is engaged in the practical application of his knowledge of the science, as a vocation, it is not important whether he holds himself out as ready to make that application in behalf of all persons who desire it, or that he contracts to do it for some particular employer and at some named place."